UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIE WINKELMANN, et al., | Civil Action No.: 2:14-cv-02918 |
| Plaintiffs, | |
| v. | OPINION |
| NOVARTIS A.G., et al., | |
| Defendants. | |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' first amended complaint. (ECF No. 31). The motion is decided without oral argument pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion to dismiss is granted.

## II. BACKGROUND

In October 2013, Plaintiff Julie Winkelmann ("Winkelmann") purchased Excedrin Migraine in Crescent City, California in order to relieve her migraines. (ECF No. 23 ("FAC") ¶ 20). Around the time of purchase, Winkelmann "noticed that Excedrin Migraine and Excedrin Extra Strength seemed very similar but understood and believed that because Excedrin Migraine was sold at a higher price, it was a more effective product for migraine relief than the less expensive Excedrin Extra Strength." (*Id.*).

In November 2013, Plaintiff Michelle Cruz ("Cruz") purchased Excedrin Migraine "for her migraine headaches and has purchased Excedrin Migraine several times over the last ten years." (*Id.* ¶ 21). In or about February or March 2013, Plaintiff Thamar S. Cortina ("Cortina," and collectively with Winkelmann and Cruz, "Plaintiffs") purchased Excedrin Migraine "to treat

her migraine headaches." (*Id.* ¶ 22). Cortina "believed that Excedrin Migraine was specifically formulated and better for treating migraine headaches. She would not have purchased Excedrin Migraine had she known that the product contained the identical active ingredients as the less expensive Excedrin Extra Strength medicine." (*Id.*).

Plaintiffs bring this lawsuit under the California Unfair Competition Law (the "UCL"), which is part of California's Business and Professions Code, on behalf of "[a]ll persons who purchased Excedrin Migraine at a higher price than Excedrin Extra Strength on or after August 1, 2005, in the State of California for personal, family, or household purposes." (*Id.* ¶ 23).

Excedrin Extra Strength is an over-the-counter combination pain reliever that was first approved in the 1960s by the Food and Drug Administration (the "FDA") for the temporary relief of minor aches and pains due to headache. (*Id.* ¶¶ 10-11). Each unit of Excedrin Extra Strength contains active ingredients of 250 milligrams of acetaminophen, 250 milligrams of aspirin, and 65 milligrams of caffeine. (*Id.* ¶ 11). The FDA approved Excedrin Migraine in January 1998 for the temporary relief of mild to moderate migraine headache pain with the same formulation and dosage as Excedrin Extra Strength. (*Id.* ¶ 13). "According to a Bristol-Myers press release on the approval, Excedrin Migraine was given its own trademark and packaging 'in order to provide important information about appropriate use and when to consult a doctor' but would be available at the same suggested retail price as Excedrin Extra Strength." (*Id.*). Moreover, as Plaintiffs note, "[n]ewspaper ads published in February 1998 emphasized the identical formulation of Excedrin Migraine and Excedrin Extra Strength." (*Id.* ¶ 14). These ads stated:

> Clinical research has just proven that the formula in Excedrin actually relieves migraine pain. And because of the distinct nature of migraines, the FDA worked with Excedrin to develop a different package with specific information for migraine sufferers. So now next to Excedrin, there's a new package—same medicine—called Excedrin Migraine.

(*Id.*).

Briston-Myers Squibb, Co., Defendants' predecessor in interest, sold both Excedrin Extra Strength and Excedrin Migraine "at the same wholesale price and provided the same suggested retail price for both products." (*Id.* ¶¶ 15-16). Currently, Defendants sell 24-count packages of Excedrin Migraine at a wholesale price of $3.60 and Excedrin Extra Strength at a wholesale price of $3.20. (*Id.* ¶ 17). Defendants sell 100-count packages of Excedrin Migraine at $10.25 wholesale and Excedrin Extra Strength at $9.05 wholesale. (*Id.*). Defendants also sell 200-count packages of Excedrin Migraine at $13.50 wholesale, compared to the $12.00 wholesale price for Excedrin Extra Strength. (*Id.*). These wholesale prices, Plaintiffs allege, are reflected in the higher retail prices paid by customers at stores like Walmart, Amazon.com, Rite-Aid, and Walgreens. (*Id.* ¶ 18). Amazon.com is home to the highest retail price differential alleged by Plaintiffs: a $1.05 variance between the 300-count packages of Excedrin Extra Strength and Excedrin Migraine. (*Id.*).

### III. <u>LEGAL STANDARD</u>

For a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

Plaintiffs' first amended complaint asserts one cause of action for violations of the UCL.[1] More specifically, Plaintiffs allege that:

> Defendant's acts and practices, as alleged in this complaint, constitute unfair practices in that (i) they are unethical, unscrupulous, and substantially injurious to consumers; (ii) any legitimate utility of Defendant's conduct is outweighed by the harm to consumers; and (iii) the injury is not one that consumers reasonably could have avoided. In particular, it is fundamentally unfair to sell Excedrin Migraine at a higher price than the pharmacologically identical product Excedrin Extra Strength.

(FAC ¶ 31). Plaintiffs further aver that "[a]s a result of Defendant's conduct as alleged herein, Plaintiffs and class members have lost money. Specifically, Plaintiffs and class members paid more for Excedrin Migraine than the pharmacologically identical product Excedrin Extra Strength." (*Id.* ¶ 32).

The UCL prohibits "unfair competition[, which] mean[s] and include[s] any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" Cal. Bus. & Prof. Code § 17200. Because "[t]he statute does not define the term 'unfair,' . . . articulating its parameters is a task that has fallen to the courts." *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1170 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016).

In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company*, the California Supreme Court held that "[a]n undefined standard of what is 'unfair' fails to give businesses adequate guidelines as to what conduct may be challenged and thus enjoined and may sanction arbitrary or unpredictable decisions about what is fair or unfair." 973 P.2d 527, 543 (Cal. 1999). Accordingly, the Court held that a claimant's allegation of an unfair business practice

---

[1] The parties agree that California law applies to this matter.

4

"must be tethered to a constitutional or statutory provision or a regulation carrying out statutory policy." *Id.*; *see also Gregory v. Albertson's, Inc.*, 104 Cal. App. 4th 845, 853 (Ct. App. 2002).

In *Boris v. Wal-Mart Stores, Inc.*, the Court applied the aforementioned "tethering test" to a case similar to the instant matter. 35 F. Supp. 3d at 1171-72. More specifically, the plaintiffs in *Boris* alleged "that Equate Migraine's price and red packaging deceived them into believing that it was more effective than the cheaper, green-packaged Equate ES" in violation of the UCL. *Id.* at 1168, 1170. In evaluating the plaintiffs' allegations, the Court held that:

> Plaintiffs have not pointed to any specific constitutional, statutory, or regulatory provision that embodies a policy that Equate Migraine's price and red packaging violate. And the Court is aware of none. Absent some legislative enactment, price setting is ordinarily left to the business judgment of merchants. Taken to its logical conclusion, Plaintiffs' claim requires the judiciary to make pricing decisions, such as ruling that pharmacologically identical drugs must be the same price or may have only a limited price differential, or imposing liability for differential pricing on a necessarily unpredictable case-by-case basis.

*Id.* at 1171-72. Accordingly, the Court dismissed the plaintiffs' claims for failure to state a claim upon which relief may be granted. *See id.* at 1172.

Plaintiffs aver in their opposition that their case is distinguishable from *Boris* because:

> What Plaintiffs here contend is that Novartis is engaging in unfair conduct by, in effect, charging for FDA-mandated directions and instructions. The different packaging that allows Novartis to charge a higher price to migraine sufferers was recommended and approved by the FDA to better communicate specific directions and warnings to migraine sufferers—not so Novartis could charge more to those suffering from migraines. *It is fundamentally unfair for Novartis to seek to profit from these FDA-mandated warnings. It also runs counter to one of the most important goals of the FDA labeling regulations and approval process, which are designed to ensure that consumers of pharmaceuticals receive the appropriate directions and warnings in the most effective way possible.* By charging different prices for packages with different instructions, Novartis is encouraging migraine sufferers to buy the cheaper package with the wrong directions and warnings. They will receive the very same ingredients by buying Excedrin Extra Strength, but will not have the appropriate directions or warnings to refer to as needed .... *Plaintiffs' unfair practices claim therefore satisfies the tethering test, as it points to a specific governmental policy that Novartis's conduct is undermining—namely, the FDA's*

5

> *policy of using separate packaging to most effectively communicate specific instructions to migraine users.*

(ECF No. 38 at 7-8) (emphasis added). Nonetheless, Plaintiffs' first amended complaint states that:

> Defendant's acts and practices, as alleged in this complaint, constitute unfair practices in that (i) they are unethical, unscrupulous, and substantially injurious to consumers; (ii) any legitimate utility of Defendant's conduct is outweighed by the harm to consumers; and (iii) the injury is not one that consumers reasonably could have avoided. In particular, it is fundamentally unfair to sell Excedrin Migraine at a higher price than the pharmacologically identical product Excedrin Extra Strength.

(FAC ¶ 31). Plaintiffs' first amended complaint does not set forth facts in support of the argument presented in Plaintiffs' opposition. Plaintiffs do not allege that Defendants charge a premium for including additional directions on the packaging of Excedrin Migraine. Moreover, Plaintiffs do not contend that they paid more for Excedrin Migraine because its packaging included additional directions. Rather, Plaintiffs aver that they "understood and believed that because Excedrin Migraine was sold at a higher price, it was a more effective product for migraine relief than the less expensive Excedrin Extra Strength." (*Id.* ¶ 20; *see also id.* ¶ 22 ("Cortina believed that Excedrin Migraine was specifically formulated and better for treating migraine headaches.")). Additionally, no plaintiff maintains that he or she was harmed by purchasing the less expensive Excedrin Extra Strength, without additional directions on its packaging. To the contrary, Plaintiffs contend that "Plaintiffs and class members *paid more* for Excedrin Migraine than the pharmacologically identical product Excedrin Extra Strength," (*id.* ¶ 32) (emphasis added), and "would not have purchased Excedrin Migraine had [they] known that the product contained the identical active ingredients as the less expensive Excedrin Extra Strength medicine." (*Id.* ¶ 22).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben.*

*Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Because Plaintiffs' first amended complaint does not set forth facts in support of the argument presented in Plaintiffs' opposition, the Court finds that Plaintiffs have not pointed to any specific constitutional, statutory, or regulatory provision that embodies a policy that Excedrin Migraine's price violates. *See Boris*, 35 F. Supp. 3d at 1171-72. Accordingly, the Court finds that applying the "tethering test," Plaintiffs have failed to state a claim upon which relief may be granted.

Nonetheless, Plaintiffs contend that even if their allegations fail under the "tethering test," Plaintiffs' first amended complaint states a claim under California's "balancing test." (ECF No. 38 at 5-6). Under California's "balancing test," a "business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (Ct. App. 2006).

> Here, Plaintiffs maintain in their opposition that:
>
> Here, Plaintiffs have alleged that Novartis unethically and unscrupulously uses FDA-mandated migraine instructions to extract additional profits from those consumers suffering from migraines. Consumers are harmed because they either pay more for Excedrin Migraine than they would pay for the identical product without the FDA-mandated migraine instructions and warnings, or they pay less for Excedrin Extra Strength without the migraine-specific information that the FDA seeks to communicate to consumers. And while there is certainly a benefit to consumers from different packaging—as the FDA recognized when it recommended the different packaging so that specific instructions be conveyed to migraine suffers—there is no benefit from Novartis's conduct of charging more for that information.

(ECF No. 38 at 9). As explained above, however, Plaintiffs' first amended complaint does not set forth facts in support of Plaintiffs' argument. Plaintiffs do not contend that the decision to charge a premium for Excedrin Migraine was driven by the inclusion of additional instructions, or that Plaintiffs purchased Excedrin Migraine because its packaging included additional instructions.

Nor does any plaintiff maintain that he or she suffered harm from purchasing Excedrin Extra Strength, the cheaper product, without additional instructions. Rather, Plaintiffs' first amended complaint alleges that the injury to consumers was "pa[ying] more for Excedrin Migraine than the pharmacologically identical product Excedrin Extra Strength." (FAC ¶ 32). Because pricing alone has not been found to violate the "balancing test" under California law, the Court finds that there is "no unfairness to be weighed." *See Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 265 (Ct. App. 2003). Accordingly, the Court finds that under either the "tethering test" or the "balancing test," Plaintiffs fail to state a claim upon which relief may be granted.[2]

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. To the extent the pleading deficiencies identified by this Court can be cured by way of amendment, Plaintiffs are hereby granted thirty (30) days to file an amended pleading. An appropriate Order accompanies this Opinion.

DATED: June 25, 2018

_____
CLAIRE C. CECCHI, U.S.D.J.

---

[2] Because the Court finds that Plaintiffs fail to state a claim upon which relief may be granted, the Court need not address Defendants' argument that Plaintiffs' claims are barred by the UCL's safe harbor provision. (ECF No. 31 at 8). Moreover, to the extent Defendants argue that any viable state law claim imposing liability on Defendants would be preempted by federal law, and is barred by the UCL's safe harbor provision, (*id.* at 8-11), Plaintiffs clarified in their opposition that "Plaintiffs are not making any such claim." (ECF No. 38 at 11).